562 A.2d 849

**COMMONWEALTH of Pennsylvania,**

v.

**Charles BELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1989.

Filed July 25, 1989.

Brian R. Williams, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

TAMILIA, Judge:

Appellant was tried by a jury and found guilty on February 26, 1987 of robbery, burglary, aggravated assault, criminal conspiracy and possessing an instrument of crime. He was sentenced to three consecutive terms of imprisonment totalling 15 to 50 years (robbery, 5–20 years; burglary, 5–20 years; aggravated assault, 5–10 years) and two concurrent terms of imprisonment totalling 5½ to 15 years (conspiracy, 3–10 years; possessing instrument of crime, 2½ to 5 years). Seven issues are raised on appeal: 1) whether the court erred in failing to dismiss the case under Rule 1100; 2) whether the court erred in refusing to suppress identifications by Father Rock; 3) whether the court erred by refusing to suppress physical evidence; 4) whether the court erred in refusing to suppress the defendant's pre-trial statements; 5) whether the court erred by refusing to declare a mistrial; 6) whether the court erred by refusing to dismiss all charges, after it became known that the Commonwealth destroyed key evidence; and 7) whether the court imposed an illegal and improper sentence.

On October 4, 1984, at approximately 4:00 a.m., Father Richard Rock of the St. Vincent DePaul Roman Catholic Church in Philadelphia arose from sleeping to go to the bathroom. His bedroom was on the second floor of the rectory and as he walked down the hallway he heard the television playing in the T.V. room. As he approached the room to investigate, he saw a person's shadow on the door frame leading him to believe the person was a black male, 5' 6"—5' 7", and 150–160 pounds. The man immediately jumped out and hit Father Rock over the head and again in the mouth with a metal pipe and then fled. During the attack Father Rock did not see the man's full face but did see the man's profile.

Father Gregory Cozzubbo awoke after hearing Father Rock's cries for help and looked out the window to see two people running across the rectory's front yard toward the parish cars. He noticed one person wore a short-waisted dark jacket and light trousers. Father Rock later stated his attacker was wearing a short, black jacket.

The police were called to the rectory and one patrol car, while entering the rectory driveway, was almost hit by a Ford Maverick occupied by two black males as they were backing out of the driveway. The Maverick was being driven at a very high rate of speed and crashed into a tree before speeding down the street. Three police cruisers chased the car and finally it smashed into a brick wall, bounced off the wall and hit two parked cars. The driver attempted to flee but was grabbed and frisked by an officer because the officer noticed his pockets were bulging. The driver was later identified as Charles Bell, appellant, and several items found in his pockets and inside the Maverick were identified by Father Rock as rectory property.

The two males were transported to the rectory and Father Rock, prior to going to the hospital, identified appellant as his attacker even though appellant was bleeding and had a lump on his head. Appellant was taken to the hospital for treatment of his injuries sustained in the crash and then to the police station. Appellant indicated he wanted to make a

statement so he was read his *Miranda* rights and inter-
viewed by Detective Frank Jastrzembski.

The detective noticed appellant's breath smelled of alco-
hol and questioned him about it. Appellant admitted he had
been drinking but Detective Jastrzembski continued the
interview since appellant was able to understand the ques-
tions, answer them and sign his name at the end of the
interview form. In his statement, appellant limited his role
to merely waiting outside in the Maverick while his cohort
broke into and ransacked the rectory.[1]

■ A criminal complaint was filed against appellant on
October 4, 1984 but he did not come to trial until February
18, 1987; therefore, he claims his right to a speedy trial was
violated and the charges should have been dismissed pursu-
ant to Pa.R.Crim.P. 1100.

Appellant's argument, however, is based upon the fact
that he was incarcerated from the time of arrest until the
time of trial so none of the delay is attributable to him.
This argument ignores the fact that an attorney, acting for
appellant, can cause delay attributable to appellant which is
excludable under Rule 1100. *See Commonwealth v. Wells*,
513 Pa. 463, 521 A.2d 1388 (1987). Also, appellant does not
allege the Commonwealth failed to exercise due diligence in
bringing him to trial. Rather, appellant complains he was
not given a speedy trial because the *court* was unavailable
and alleges, according to *Commonwealth v. Mayfield*, 469
Pa. 214, 364 A.2d 1345 (1976), the court must establish it
devoted a reasonable amount of its resources to the criminal
docket and every reasonable effort was made to bring
appellant to trial within 180 days.

The trial court found the delays were due to defense
counsel failing to appear, counsel withdrawing from the
case, appellant's indecision on whether he wanted a jury
trial and unavoidable judicial delay. Under Rule 1100(c),
the delays attributed to appellant are excludable from the
180 days calculation. Further, judicial delay caused by an

1. Upon his return to the rectory from the hospital, Father Rock found
it had, in fact, been ransacked and garbage was strewn about.

overcrowded docket is a valid reason to extend Rule 1100's timetable. *Commonwealth v. Kuhn,* 327 Pa.Super. 72, 475 A.2d 103 (1984). Accordingly, appellant's argument must fail.

■ Appellant's next three issues claim the court erred in denying the pre-trial suppression motions appellant made as to Father Rock's initial identification of appellant, the physical evidence seized from appellant and appellant's signed statement. In reviewing the court's rulings, our initial task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch,* 510 Pa. 138, 507 A.2d 74 (1986). First, appellant claims Father Rock's identification of appellant was impermissibly suggestive since Father Rock did not get a good look at him during the attack and when he identified appellant, it was when appellant was handcuffed in the back of a police van.

Admittedly, Father Rock did not get a full view of his attacker but he did get a side view of his face, knew his approximate height and weight and the clothing he was wearing. Within fifteen minutes of the attack, the police had apprehended appellant while driving the parish car and returned him, along with his cohort, to the rectory where Father Rock immediately identified him as the attacker. Father Rock did get a good enough look at appellant during the attack to notice he had a large bump on his head when he was brought back to the rectory by police which he did not have when Father Rock first saw him. Considering Father Rock gave an identification within fifteen minutes of the attack based upon the factors listed above and the police followed the Maverick from the rectory driveway to the place where it crashed and apprehended appellant, we believe the identification had a proper foundation and was not impermissibly suggestive. Only where the circumstances of the pre-trial identification are "so infected" by suggestiveness that there is an irreparable likelihood of misidentification should the evidence be precluded from the trial. *Commonwealth v. Thomas,* 372 Pa.Super. 349, 539 A.2d 829 (1988). As we stated in *Thomas,* prompt, on-the-scene

identifications do not fit into this category of suggestiveness absent some special elements of unfairness. We find no reason to disagree with the trial court's ruling on this suppression motion.

■ Appellant's second suppression motion related to the physical evidence seized from appellant's pockets when he was stopped by police after wrecking the Maverick. Appellant contends Officer Chilutti did not have probable cause to arrest him. The officer testified he grabbed appellant as he started to flee and noticed appellant's pockets were stuffed so full appellant looked very bulky. (N.T. 2/18/87, p. 74). For his own safety, he frisked appellant and removed various items from his pockets, two of which were key rings marked "church" and "hall". After these items were discovered, Officer Chilutti received information over the police radio that Father Rock of St. Vincent DePaul Catholic Church had just been robbed and beaten and the church car was taken. The officers radioed back with the car's identification number and found out the Maverick belonged to the church. At this point, appellant was arrested and immediately transported to the rectory for possible identification by Father Rock.

The existence of probable cause is determined by an examination of whether: "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ... An arresting officer, in executing a valid arrest, may rely upon radio broadcasts emanating from police facilities provided, however, that the arresting officer has been either (1) ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest; (2) received information justifying arrest; or (3) heard information which, coupled with facts he personally observed, provided probable cause to arrest. (Citations omitted.)

*Commonwealth v. Reddix*, 355 Pa.Super. 514, 518–19, 513 A.2d 1041, 1043 (1986), quoting *Commonwealth v. Evans*, 343 Pa.Super. 118, 494 A.2d 383, 388 (1985).

Looking at the facts and circumstances known to Officer Chilutti, we find he had probable cause to arrest appellant and the court properly allowed the physical evidence to be introduced at trial as fruits of a justified and legal search.

■ Finally, appellant claims his statement to police should have been suppressed because it was involuntary and coerced and his *Miranda* rights were not given to him. Further, he states, "It is uncontradicted that the defendant was under the influence of alcohol when the statement was taken." Appellant's brief p. 13. By this, we assume appellant is saying he was too intoxicated to voluntarily make a statement.

We must reject appellant's assertion he was not given his *Miranda* rights since he does not support this contention in any way and Detective Jastrzembski testified he did, in fact, precede his questioning with the *Miranda* rights and standard questions as to appellant's understanding of the proceeding. (N.T. 2/25/87, p. 8). Although appellant claims his statement was involuntary since he was intoxicated, he did initial the responses to the standard questions and signed the statement. He admitted to having been drinking but the detective believed he was capable of understanding and answering the questions.

[T]he fact that an accused has been drinking does not automatically invalidate his subsequent incriminating statements. The test is whether he had sufficient mental capacity at the time of giving his statement to know what he was saying and to have voluntarily intended to say it. Recent imbibing or the existence of a hangover does not make his confession inadmissible, but goes only to the weight to be accorded to it.

*Commonwealth v. Stark*, 363 Pa.Super. 356, 368, 526 A.2d 383, 389 (1987), quoting *Commonwealth v. Smith*, 447 Pa. 457, 460, 291 A.2d 103, 104 (1972).

From the record, we can find no reason to overturn the trial judge's ruling as he heard testimony from both sides and determined appellant was not so intoxicated that he did not know what he was doing.

■ Appellant's next claim is totally without merit. He argues he should have been granted a mistrial because the jury failed to return a verdict on the charge of receiving stolen property while he was found guilty on all other charges. Appellant argues the jury failed to follow the court's instructions to reach a full and final verdict. He has failed, however, to give us any explanation of how this failure prejudiced him so that a mistrial was appropriate. Actually, appellant benefited since the Commonwealth *nol prossed* the receiving stolen property charge. Unless the incident complained of will unavoidably result in prejudice to appellant thereby denying him a fair trial, a mistrial is inappropriate. *Commonwealth v. Atkinson*, 364 Pa.Super. 384, 528 A.2d 210 (1987).

■ Next, appellant argues he should have been granted a mistrial when the Commonwealth failed to produce the jacket worn by appellant at his arrest. Without this jacket, he claims, the jury could not accurately determine the reliability of Father Rock's identification of his attacker. Appellant argued to the court the charges should be dismissed but he did not request a mistrial (N.T. 2/20/87, p. 3–6). In any event, the court found the jacket was not necessary to substantiate the identification in light of the other evidence against appellant. Furthermore, the Commonwealth had less of a case without the jacket so its loss was to appellant's advantage.

■ We find, however, the Commonwealth is correct in claiming the issue is waived for failure to raise it prior to this appeal. Appellant did not request a mistrial but requested the charges be dropped; these are two separate types of relief. Where counsel fails to request a mistrial when the alleged prejudicial event occurs, the issue is not preserved for appellate review. *Commonwealth v. Chimenti*, 362 Pa.Super. 350, 524 A.2d 913 (1987), Pa.R.Crim.P. 1118(b).

Appellant's final argument is the court erred in giving him a separate sentence for each of the crimes of robbery, burglary and aggravated assault since robbery[2] and aggravated assault[3] merged for sentencing purposes. He argues the charges merge because when Father Rock was struck with the pipe, which was an aggravated assault, it turned the intended theft into a robbery; if Father Rock had not been hit by his assailant, the only crime committed would have been burglary.

The Commonwealth contends the second blow which landed on Father Rock's mouth amounted to the separate offense of aggravated assault since it was an unprovoked attack that had nothing to do with appellant's ability to flee with the stolen items. We believe the Commonwealth's position which attempts to establish a separate aggravated assault in the commission of the robbery, because two blows were struck is untenable. The blows were in rapid succession and part of the act constituting the robbery, and therefore, cannot constitute separate crimes. If there was a break in the action and a second assault occurred, after the acts that constituted some of the elements of the robbery, the Commonwealth would be correct. Such is not the case here.

Recently in *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), our Supreme Court reconsidered

**2.  18 Pa.C.S. § 3701.  Robbery**
　　(a) **Offense defined.—**
　　(1) A person is guilty of robbery if, in the course of committing a theft, he:
　　(i) inflicts serious bodily injury upon another;
　　. . . .
　　(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

**3.  18 Pa.C.S. § 2702.  Aggravated assault**
　　(a) **Offense defined.—**A person is guilty of aggravated assault if he:
　　(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

"the question of when convictions of separate crimes merge, for sentencing purposes, because they arise from the same criminal act." *Id.*, 521 Pa. at 559, 559 A.2d at 26.

Reversing this Court's decision in *Commonwealth v. Leon Williams*, 368 Pa.Super. 315, 534 A.2d 101 (1987), and their own 1987 decision in *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), cert. denied, — U.S. —, 108 S.Ct. 2852, 101 L.Ed.2d 889 (1988), the Supreme Court held that the test for merger of sentences would no longer involve an inquiry into whether separately defined offenses harm substantially different interests of the Commonwealth.[4] *Leon Williams*, therefore, establishes the test for merger in Pennsylvania as strictly whether the separate offenses are lesser included and greater included offenses.

Applying the *Leon Williams* approach to the facts before us leads us to conclude the crimes of aggravated assault and robbery do merge in this instance. As noted, *supra*, the two blows to Father Rock's head were in rapid succession and part of the act constituting the robbery in that they were done to facilitate Williams' escape from the rectory. In sharp contrast to this, we found, in *Commonwealth v. Taylor*, 362 Pa.Super. 408, 524 A.2d 942 (1987), that different interests *were* vindicated and did not allow merger of aggravated assault and robbery where the defendant choked his victim with an electrical cord until she passed out and fell to the floor. At this point, defendant did not just take the money and flee but instead he got on top of his victim, holding her head between his knees, and stabbed her repeatedly with a knife. During this attack the knife broke so defendant used a pair of scissors and an ice pick. After this vicious attack, defendant stole items from

---

4. Prior to the decision by the Supreme Court, merger had consisted of two elements: (1) the crimes must have necessarily involve[d] one another, and (2) the crimes, even if they necessarily involved one another, would not merge if there were substantially different interests of the Commonwealth at stake and the defendant's act had injured each interest. *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), *rev'd by Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989).

the victim's apartment and fled. The facts in this case do not consist of such clearly differentiated activities as to permit the finding that two distinct crimes were committed.[5]

In *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989), another merger case filed by the Supreme Court the same day as *Leon Williams*, the Court further construed the merger doctrine in the context of criminal violence. The Court held:

> [I]f a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Id.*, 521 Pa. at 364, 555 A.2d 1233. Accordingly, in this case the aggravated assault conviction properly merges into the robbery conviction. The two blows to the victim's head were the cause of the serious bodily injury which turned the theft into a robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(i).

Because our disposition of this appeal upsets the original sentencing scheme of the trial court, we vacate the judgment of sentence as to all convictions and remand the case for resentencing on all counts except aggravated assault which, we find, merges with robbery. *See* 42 Pa.C.S. § 706; *Commonwealth v. Goldhammer*, 512 Pa. 587, 517 A.2d 1280 (1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987); and *Commonwealth v. Ford*, 315 Pa. Super. 281, 461 A.2d 1281 (1983).

Jurisdiction relinquished.

BECK, J., concurs.

---

**5.** We recognize *Taylor* was filed under the old two-part merger test but find it applicable here to distinguish between the facts here where there was one assault consisting of two blows to the head, and *Taylor*, where the victim was choked until she passed out (the bodily injury necessary to maintain a robbery conviction) then gratuitously stabbed repeatedly with a series of weapons, which constituted the separate aggravated assault.

BECK, Judge, concurring:

I join the majority opinion. I specifically agree with the majority that appellant waived his claim that the trial court erred by not declaring a mistrial after the Commonwealth failed to produce a jacket that the defense had planned to introduce into evidence. I write separately in order to clarify the circumstances under which failure to request a mistrial will result in waiver of an allegation of error.

Pennsylvania Rule of Criminal Procedure 1118(b) provides in part: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed." Thus, if the defendant fails to request a mistrial, the issue of whether the trial court erred by not ordering a mistrial is ordinarily waived on appeal. However, in *Commonwealth v. Easley*, 483 Pa. 337, 396 A.2d 1198 (1979), the Pennsylvania Supreme Court recognized an exception to this doctrine. In that case, the appellant argued that the prosecutor had improperly commented on appellant's exercise of his right to remain silent. The Court stated:

> Although the defense attorney did not request a mistrial, we note the issue is properly preserved for appellate review. Instantly, defense counsel's objection to the prosecutor's comment was overruled, and the reason for the objection was obvious. Moreover, since the objection was overruled, the trial judge was in effect saying that the assistant district attorney's comment was proper. As in *Commonwealth v. Maloney*, 469 Pa. 342, 352, 365 A.2d 1237, 1242 (1976) (plurality opinion), a motion for a mistrial under these circumstances would have been an exercise in futility.

483 Pa. at 342 n. 6, 396 A.2d at 1201 n. 6.

Under *Easley*, a defendant has no obligation to motion for a mistrial once a timely defense objection has been denied by the trial court. It could also be argued that a motion for mistrial should not be required where the trial court has denied a defense motion for a lesser form of relief, such as a request for cautionary instructions. Under such circumstances, a motion for mistrial might also be

regarded as an exercise in futility. On the other hand, in the case sub judice, defense counsel demanded the total dismissal of charges against his client—a remedy even more drastic than the grant of a mistrial. The denial of a motion to dismiss charges does not clearly indicate that the court would be certain to deny a motion for mistrial. Therefore, appellant's failure to comply with Rule 1118(b) need not be excused.