676 A.2d 632

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Clarence Allen BELSAR, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1995.

Decided May 21, 1996.

Jack R. Heneks, Jr., Uniontown, for Appellant.

Ralph C. Warman, Peter U. Hook, Uniontown, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On the evening of October 8, 1992, Clarence Belsar purchased a .22 caliber semi-automatic rifle. At about 12:30 a.m. that evening, Belsar called the victim, James Bohatch, and asked him to meet Belsar at a parking lot. He claimed that he had a fight with his wife and needed a ride to a girlfriend's house. When Bohatch arrived at the parking lot about 1:30 a.m. on October 9, Belsar told Bohatch he would have to retrieve his clothes from behind a fence. Belsar went behind the fence and instead retrieved the rifle he had earlier purchased. He then shot Bohatch at least five times, hitting him in the chest, pectoral area, stomach, upper arm and finger. The victim was seriously injured.

Bohatch testified that after he was shot, he fell to the ground and pretended to be dead. He then heard Belsar, who was joined by a confederate, say: "Ronnie, we got to find his car keys. If we don't find his car keys we are dead men" and "Ronnie, get his wallet." As the two assailants were looking for the car keys, Bohatch testified:

A. They—Belsar and the person he was with went around back of the fence looking for those car keys. When I knew they were back there I started to crawl through the parking lot. I crawled about ten feet. There was a couple of cars that came up Dixon. I don't know if I was blocked by my car or what. I didn't want to yell and so I tried to wave them down—nobody stopped. I crawled towards Dixon and towards the front of the Dairy Mart when I heard Belsar say, "he is not dead yet," and I struggled to try to get up on my feet.

* * *

Q. What happened at that point?
A. I struggled to get up. They began kicking me.
Q. Who began kicking at you?
A. Both Belsar and Ron.
Q. Kicking you where?

A. Just kicking at me. I struggled to grab ahold of Belsar. I got ahold of the flannel shirt that he had on. Belsar told Ronnie, "help me with him—help me with him" and the juvenile just took off.

\* \* \*

Q. Did you see him take off?

A. Yeh; I seen him leave. I had Belsar by the collar of his shirt. I don't know what I said or what I muttered. I ripped the shirt off of him and he left.

\* \* \*

Q. What did you do then?

A. I again went back down to the ground. I held my heart. I was bleeding profusely. I knew that I was hit there the worst. I had volunteered in an ambulance service for eight years. I was familiar with my injuries and how serious they were. I tried to control my breathing which was very difficult because I couldn't get any air. I tried to keep myself calm and I began yelling for help.

N.T. 19–21.

A jury convicted Belsar of aggravated assault as a felony of the first degree (inflicting serious bodily injury) and as a felony of the second degree (inflicting bodily injury with a deadly weapon); attempted murder; robbery; and criminal conspiracy. He was sentenced to ten to twenty years for aggravated assault as a first degree felony; a consecutive term of five to ten years for attempted murder; and five to ten years for robbery, consecutive to the aggravated assault but concurrent with the sentence for attempted murder. No sentence was imposed for aggravated assault as a second degree felony or for criminal conspiracy.

Belsar appealed to Superior Court, which affirmed the judgment of sentence. We granted allocatur to address Belsar's claim that he was sentenced in violation of our opinion in *Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20 (1994).

In *Anderson* we attempted to clarify our earlier cases *Commonwealth v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989) and *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989) as follows:

[W]e reaffirm our holding in *Williams* and abrogate the holding in *Weakland.* We now hold that in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses.... In other words, it does not matter for purposes of merger whether one regards Weakland's striking the customer and kidnapping him as one encounter or as two encounters, for the same facts, i.e., striking the victim with a gun, may be used to satisfy the force requirements of at least two crimes, kidnapping and aggravated assault, and the sentences for each crime will not merge because these crimes are not greater and lesser included offenses.

*Anderson,* 538 Pa. at 579, 650 A.2d at 22. Applying this analysis to the facts of *Anderson,* we concluded that aggravated assault merges into attempted murder for purposes of sentencing. Thus, the rule which emerged from *Anderson* was that a single criminal act would supply the necessary elements for as many crimes as were applicable to that act, with the proviso that for sentencing purposes, the greater and lesser included offenses would merge, and that aggravated assault merges into attempted murder for sentencing purposes.

The present case is not analogous to *Anderson,* although Belsar seeks to make it so. In *Anderson* a single criminal act—shooting—produced the injury to the victim and the crimes applicable to that single act merged because they were greater and lesser included offenses; in the present case, although the shooting was an aggravated assault, an additional aggravated assault was committed. The additional assault was the kicking of a seriously injured man.

We addressed this type of situation in *Weakland.* Although we abrogated *Weakland* 's holding with respect to the sentencing effect of committing a single criminal act, we did not

abrogate *Weakland*'s treatment of multiple criminal acts, which remains the law of Pennsylvania. In *Weakland* we stated:

> If ... the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

521 Pa. at 364, 555 A.2d at 1233.

■ Thus, on the facts of this case, merger does not apply, for the kicking attack was a separate incident that exceeded that which was necessary to accomplish the attempted murder. If the sentence for the kicking-aggravated assault were to merge with the sentence for attempted murder, the merger would implicate the "volume discount" on crime which we discussed in *Anderson:*

> Our concern, as we pointed out in *Weakland,* is to avoid giving criminals a "volume discount" on crime. If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery. But in Pennsylvania, there is a legally recognized difference between these two crimes. The criminal in the latter case may be convicted of more than one crime and sentences for each conviction may be imposed where the crimes are not greater and lesser included offenses.

*Anderson,* 538 Pa. at 579–80, 650 A.2d at 22.

■ In sum, the crime of aggravated assault here occurred by the act of kicking a man who had just been wounded by rifle fire. This act was different from and in addition to the criminal's earlier act of shooting, which was the factual basis for the convictions of attempted murder and aggravated assault. The aggravated assault based on shooting merged with attempted murder; but the aggravated assault which did not merge was based on the act of kicking him later. When a

criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each. To hold that multiple assaults constitute only one crime is to invite criminals like Belsar to brutalize their victims with impunity.

The second claim is that Belsar's convictions for attempted murder, aggravated assault, and robbery should all merge. Essentially what is being argued is that this case involves only a robbery, so that all crimes merge into the robbery. As Belsar argues in his brief,

> The Commonwealth has contended that the assault on the victim was undertaken in a single effort to rob the victim. Consequently, it all becomes a singular act for sentencing purposes and all charges should merge into the robbery for sentencing purposes.

Brief at 22. In essence, this argument harks back to the old analysis in which the court was required to figure out how many offenses against the Commonwealth or how many "evils" had been committed in a criminal episode. If the criminal episode consisted of a series of criminal acts which were regarded as one injury to the Commonwealth, then the criminal could receive only one sentence. We slew this particular dragon in both *Williams* and *Weakland,* but it is apparent that the dragon has regenerated itself one more time.

This claim can be separated into three questions. The first is whether the aggravated assault merges into robbery. The second is whether the attempted murder merges into robbery. The last is whether all of the crimes associated with the criminal event (the totality of facts in the case) merge into robbery.

■ As to whether aggravated assault merges with robbery, the elements of both crimes, as applied to this case are that robbery involves an infliction of serious bodily injury while committing a theft; and aggravated assault (here, kick-

ing, a felony of the first degree) [1] involves intentionally inflicting serious bodily injury under circumstances manifesting extreme indifference to the value of human life.[2] Thus, the crimes do not merge, for robbery requires proof of theft, which aggravated assault does not, and aggravated assault as a felony of the first degree requires proof of circumstances manifesting extreme indifference to the value of human life, which robbery does not.

██ The second question is whether attempted murder merges with robbery. The elements of robbery as applied to this case, again, are, infliction of serious bodily injury while committing a theft and the elements of attempted murder are taking a substantial step toward an intentional killing. *See Anderson* 538 Pa. at 582, 650 A.2d at 24. Once again, the

1. Aggravated assault as a felony of the second degree (shooting) is not the subject of this discussion, for Belsar was not sentenced on his conviction of aggravated assault as a second degree felony.

2. The elements of the crimes at issue in this case are as follows:

§ 2702. **Aggravated assault**

   (a). Offense defined.—A person is guilty of aggravated assault it he:

      (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

               * * *

      (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon. . . .

   (b) Grading.—Aggravated assault under subsection (a)(1) and (2) is a felony of the first degree. Aggravated assault under subsection (a)(3), (4) and (5) is a felony of the second degree.

§ 3701. **Robbery**

   (a) **Offense defined.**—

   (1) A person is guilty of robbery if, in the course of committing a theft, he:

      (i) inflicts serious bodily injury upon another;

      (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

      (iii) commits or threatens immediately to commit any felony of the first or second degree;

      (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; or

      (v) physically takes or removes property from the person of another by force however slight.

   (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

crimes do not merge, for robbery requires proof of a theft, which attempted murder does not; and attempted murder requires taking a substantial step toward an intentional killing, which robbery does not.

▮ The last question is whether all crimes attributable to this criminal episode merge into robbery because, as Belsar would have it, the only criminal event in this case was a robbery. As we stated in *Anderson,* reaffirming our holding in *Williams,* "in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses." In other words, it does not matter whether one characterizes what the criminal did as one act (forcefully taking another's property) or a thousand acts (entering into an agreement with another to commit a crime, shooting someone five times with a rifle, searching their body for keys, stealing their wallet, kicking them when it appears that they remain alive): whatever he did—the facts in the case—will support as many convictions as there are applicable crimes, save only that if some of those crimes merge with others, he may not be sentenced on the crimes that merge. As we have seen above, robbery merges with neither attempted murder nor aggravated assault.

To hold that the crimes merge (i.e., that the assault was merely a part of the robbery and not a crime in itself) would be to award criminals the "volume discount" on crime that we have mentioned before. That we refuse to do.

Order of Superior Court affirming the judgment of sentence is affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

CAPPY, J., files a dissenting opinion which is joined by ZAPPALA, J.

CAPPY, Justice, dissenting.

Because the assertion of the majority that Appellant's kicking of the victim provides the basis for the conviction of

Aggravated Assault, 18 Pa.C.S.A. § 2702(a)(1), is without support in the record, I dissent. In addition, I dissent to the majority's analysis of the merger doctrine.

At pages 350–51 of the Opinion, the majority concludes that the aggravated assault charge of inflicting serious bodily injury, 18 Pa.C.S.A. § 2702(a)(1), was supported by Appellant's kicking of the victim. Additionally, the majority concludes that the assault charge of inflicting bodily injury with a deadly weapon, 18 Pa.C.S.A. § 2702(a)(4), along with the attempted murder charge were supported by Appellant's shooting of the victim at least five times.[1] Because there is absolutely no indication in the record to support this characterization of the facts or to support the contention that this theory was ever presented to the jury, I cannot agree with the majority.

Indeed, what little evidence of record which does exist relative to this point supports the conclusion that both the (a)(1) aggravated assault and the (a)(4) aggravated assault were based upon Appellant's shooting of the victim five times. For example, in the criminal complaint filed by Trooper Gary D. Brownfield with District Justice Rick Vernon, dated October 9, 1991, the Trooper lists *inter alia,* both (a)(1) and (a)(4) aggravated assaults as the crimes of which Appellant is accused and recites as the factual basis thereof that Appellant "did intentionally, knowingly or recklessly cause bodily injury to [the victim] with a .22 cal. rifle, a deadly weapon, in that the [Appellant] did shoot [the victim] five times in the upper body area with said rifle. . . ." In addition, the District Attorney's Criminal information charging Appellant with conspiracy to commit Criminal Homicide, Aggravated Assault and Robbery states as the overt acts which support the conspiracy charges as follows: "planning and executing the crimes of Criminal

---

1. § 2702. Aggravated assault
   (a) **Offense defined.**—A person is guilty of aggravated assault if he
     (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
       . . . .
     (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

Homicide, Aggravated Assault and Robbery. The [Appellant] obtained a .22 caliber rifle, made arrangements to meet the victim James Joseph Bohatch and pointed the weapon at the victim discharging the weapon...." Furthermore, at the guilty plea hearing held before the Honorable Gerald Solomon on April 6, 1992, the prosecutor summarized the factual basis for the crimes to which Appellant was expected to plead guilty. During that summary, the prosecutor stated that the Appellant "did commit the offenses charged. Again, criminal attempt to commit homicide in the shooting of James Bohatch. Aggravated assault with regard to the same shooting." N.T. April 6, 1992, at p. 8.[2] And finally, in its "NOTICE OF INTENTION TO PROCEED UNDER SECTION 9712 OF THE JUDICIAL CODE", the District Attorney wrote that

the Commonwealth intends to seek the mandatory minimum sentence of five years of total confinement in accordance with Section 9712(a) of the Judicial Code, 42 Pa.C.S.A. Section 9712(a) as a preponderance of the evidence at trial established that the [Appellant] visibly possessed a firearm during the commission of the offenses of aggravated assault as defined in the Pennsylvania Crimes Code, 18 Pa.C.S.A. Section 2702(a)(1) .... (emphasis added) [3]

None of the foregoing ever mentions Appellant's kicking of the victim as a basis supporting any aggravated assault charges. In fact, nowhere in the record is Appellant's kicking of the victim mentioned as a basis supporting any charges.

Neither the opening or closing statements of the prosecutor nor those of the defense were recorded and thus we do not have an exposition of the Commonwealth's theory of this case. However, in addition to the foregoing, the Commonwealth in its brief actually concedes that "under the holding in *Anderson,* the act of shooting provides the elements for both the charges of attempted murder and aggravated assault and

---

**2.** After the recitation of the facts at this hearing, the Appellant disputed that he committed either robbery or conspiracy. The plea agreement collapsed and Appellant was subsequently brought to trial.

**3.** There was no affirmative evidence of record that the Appellant was visibly possessing the rifle at the time he kicked the victim.

the Commonwealth must in all candor concede that under this scenario the crimes merge for sentencing purposes." Commonwealth's Brief at 2.[4]

Moreover, even if I were to accept the majority's foundationless characterization that the aggravated assault under (a)(1) was based upon the kicking and not the shooting, I would still be compelled to dissent. Aggravated assault under (a)(1) requires that the actor attempt to cause or actually causes "serious bodily injury" to the victim. "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Again, there is no evidence of record whatsoever that the kicking caused such injury or could have caused such serious bodily injury. The only medical testimony offered related solely to the injuries caused by the gunshot wounds. As the Commonwealth had the burden to prove every element of the crimes charged and failed to adduce evidence as to the significance of the kicking vis-a-vis serious bodily injury, the law requires a conclusion that the Commonwealth failed to prove aggravated assault-(a)(1) based upon the kicking.

In addition to my disagreement with the majority on the foregoing points, it is necessary to set forth what I consider to be the proper analysis with regards to the merger doctrine because this area has engendered much confusion and because the majority opinion does not properly perform the merger analysis. The first question to ask in a merger analysis is, "Whether the crimes charged are lesser and greater included

---

4. The Commonwealth does go on to argue that kicking of the victim amounted to an aggravated assault, presumably of the (a)(1) variety because the Commonwealth in this regard speaks about "the intent to inflict serious bodily injury", an element of (a)(1) but not of (a)(4) and because the trial court did not sentence upon the (a)(4) charge and thus the (a)(4) conviction is not an issue here. However, the Commonwealth does not so much argue that Appellant is guilty of Aggravated Assault-(a)(1) due to his own actions but rather asserts that Appellant is guilty of Aggravated Assault-(a)(1) as an accomplice of Ronnie Foreman, who likewise kicked the victim, and as such, Appellant's sentence for aggravated assault-(a)(1) should not merge with the attempted homicide.

offenses?", because the merger doctrine is concerned with *only* such kinds of crimes. *See Commonwealth v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989); *Commonwealth v. Ennis,* 394 Pa.Super. 1, 574 A.2d 1116 (1990). If the crimes charged are not lesser and greater included offenses then there is no question of merger, no matter upon which facts the offenses are based. *See, e.g., Commonwealth v. Anderson,* 538 Pa. 574, 579, 650 A.2d 20, 22 (1994) ("We now hold that in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses.") Thus, shooting a gun one time which causes a single injury may support the force element required for convictions for aggravated assault, robbery and kidnapping and the sentences for those three crimes would not merge unless they were lesser and greater included offenses.

If however the crimes are indeed lesser and greater included crimes, such as aggravated assault and attempted homicide, *Anderson,* then we must ask the second question of our merger analysis: Are the crimes which are charged based upon the same facts? If we answer that question no, then the sentences for those two crimes do not merge. For example, if on Sunday, Jones shot Smith in the chest and then ran away, but returned on Monday and began to beat Jones, Smith would be guilty of attempted murder for the Sunday shooting and of aggravated assault for the beating on Monday and the sentences for those two convictions would not merge despite the fact that they are lesser and greater included crimes.

However, if we answer the question of whether the greater and lesser included offenses are indeed based upon the "same facts" in the affirmative, then the sentences would indeed merge, no matter how many acts occurred. " 'The same facts' means any **act or acts** which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes[,] transactions or encounters." *Anderson,* 538 Pa. at

579, 650 A.2d at 22 (emphasis added). For example, in the matter *sub judice*, the five shots fired by Appellant into the victim might be viewed as four aggravated assaults and one attempted murder or any combination thereof; nevertheless, to the extent that aggravated assault and attempted murder are greater and lesser included offenses, the sentences would merge. Mistakenly, some may say that this gives a volume discount to criminals, but no less is required by the doctrine of merger and by any concept of double jeopardy.

Analytically, the difficult question in applying the doctrine of merger becomes, "What are 'the same facts'?" The immediately preceding quote from *Anderson* perhaps overstates the case. If we were to take those words literally, then in the Smith–Jones example given earlier, we would be required to merge the sentences of the Sunday attempted murder with the Monday aggravated assault. Clearly that would not be a correct result. Reviewing the cases which deal with this question reveals a rule: the rule is that where there is a "break in the action" then the facts preceding the "break in the action" are not the "same facts" as the facts which follow the "break in the action", for purposes of the merger doctrine. *See, e.g.,* the majority Opinion at 634. "When a criminal act has been committed, **broken** off, and then resumed, at least two crimes have occurred and sentences may be imposed for each." (emphasis added); *Commonwealth v. Bell,* 386 Pa.Super. 164, 174, 562 A.2d 849, 854 (1989)

> The Commonwealth contends the second blow which landed on Father Rock's mouth amounted to a separate offence of aggravated assault since it was an unprovoked attack that has nothing to do with appellant's ability to flee with the stolen items. We believe the Commonwealth's position which attempts to establish a separate aggravated assault in the commission of the robbery, because two blows were struck is untenable. The blows were in rapid succession and part of the act constituting the robbery, and therefore, cannot constitute separate crimes. If there was a break in

the action and a second assault occurred, after the acts that constituted some of the elements of the robbery, the Commonwealth would be correct.[5]

Providing content to the concept of what qualifies as a "break in the action" for purposes of the merger doctrine will be the function of the common law's great tradition of giving definition to concepts on a case by case basis.[6]

Based upon the foregoing analysis and because aggravated assault under (a)(1) and the attempted homicide are lesser and greater included offenses, *Anderson,* and as importantly, because it is clear on this record that the charges were based on the "same facts" (the shooting), the sentences for the crimes at issue must merge.

For all of the foregoing reasons, I respectfully dissent.

ZAPPALA, J., joins this dissenting opinion.

---

**5.** While I agree with the *Bell* court's analysis with regards to the "break in the action", I disagree with the *Bell* court's conclusion that robbery and aggravated assault merge. As they are not lesser and greater included offenses, they cannot merge. The flaw in the *Bell* court's analysis was to first look at whether the robbery and the aggravated assault were based upon the same facts rather than first ask if the two crimes were greater and lesser included offenses.

**6.** As far as I am concerned because the Commonwealth did not base any charges upon Appellant's kicking of the victim, I need not address the question of whether the time and intervening acts which transpired between the Appellant's shooting of the victim and the Appellant's kicking of the victim constituted a "break in the action" for purposes of the merger doctrine.