J. S38005/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DWAYNE ISAACS, | : | No. 2750 EDA 2012 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, August 10, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002568-2009

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND SHOGAN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:   **FILED AUGUST 27, 2014**

Dwayne Isaacs appeals from the judgment of sentence of August 10, 2012, following his conviction of robbery, criminal conspiracy, rape, involuntary deviate sexual intercourse ("IDSI"), indecent assault, unlawful restraint, and false imprisonment.  On appeal, appellant challenges the sufficiency of the evidence and also raises a merger issue.  After careful review, we affirm.

The victim, R.S., testified that the night of November 25, 2008, she was working as a bartender at a bar on Lansdowne Avenue in the City of Philadelphia.  (Notes of testimony, 5/29/12 at 8.)  Appellant and his friend "Reece" came into the bar.  (*Id.* at 9.)[1]  R.S. remembered them because

---

[1] Reece was never found.  Appellant testified that he did not know Reece's last name or where he lived.  (*Id.* at 54, 67.)

they looked young, and she asked them for identification. (*Id.* at 10.) R.S. testified that they both produced identification and they were "in and out" throughout the evening. (*Id.*)

R.S. left the bar around 2:00 a.m. on November 26, 2008. (*Id.*) She had called a taxi, which was waiting for her down the street. (*Id.*) As she walked towards the taxicab, appellant stepped out in front of her from an alleyway and said, "Hey, ma" or something to that effect. (*Id.* at 11.) R.S. acknowledged him and tried to continue on her way, but appellant's accomplice, Reece, approached from behind. (*Id.*) Reece said, "Hey, ma, you know what time it is?" and lifted up his shirt to reveal a handgun. (*Id.*) Reece then indicated that R.S. should turn around and start walking in the opposite direction. (*Id.*)

R.S. complied, fearful that Reece had the gun pointed at her back. (*Id.* at 14.) Appellant walked in front of her and Reece walked behind her. (*Id.*) After walking several blocks, they led R.S. into an abandoned apartment. (*Id.* at 16.) R.S. testified there were lights on, but it appeared to be abandoned. (*Id.* at 16-17.) When they got inside, Reece demanded money. (*Id.* at 17.) R.S. gave him the $90 she had in wages and tips from working that night. (*Id.*) Reece stuffed the money into his pocket and then demanded that R.S. perform oral sex on him. (*Id.* at 18.)

Reece forced R.S. down onto her knees and she began to perform oral sex on him. (*Id.* at 18-19.) At that point, appellant began taking R.S.'s

clothes off. (*Id.*) While R.S. continued to perform oral sex on Reece, appellant penetrated R.S. vaginally from behind. (*Id.* at 20.) R.S. testified that Reece continued to keep the gun pointed at her head. (*Id.* at 21.) Reece and appellant then switched positions; appellant placed his penis in R.S.'s mouth while Reece penetrated her from behind. (*Id.* at 22-23.) R.S. testified that they had a camera and were taking photographs; Reece told appellant to "show that bitch how we do it." (*Id.* at 23.)

Eventually, Reece told R.S. to get into the bathtub. (*Id.*) He took her identification and asked her if the address was correct; R.S. confirmed that it was. (*Id.*) Reece warned her that she better never go to the police. (*Id.*) Then, Reece again demanded oral sex. (*Id.*) Reece was unable to ejaculate and complained that R.S. was doing it wrong. (*Id.* at 23-24.) Reece stated that, "maybe this would help," and put the gun against the side of her head and cocked it. (*Id.* at 24.) Reece said, "oh, this bitch thinks I'm playing." (*Id.*)

Both Reece and appellant told R.S. that she better never go to the police and "they better never hear about it ever again." (*Id.*) Finally, they left the apartment and R.S. called 911 on her cell phone which was in her jacket. (*Id.* at 25.) However, R.S. was not familiar with the neighborhood and had no idea where she was or what street she was on. (*Id.* at 27.) At that point, R.S. heard noises and ended the call and hid her phone. (*Id.*)

Reece and appellant re-entered the apartment and again told R.S. that she better not leave or tell anyone. (*Id.*)

After they left a second time, R.S. redialed 911. (*Id.*) She heard Reece and appellant banging on the front door to the apartment and demanding to be let back in; apparently, they had locked themselves out. (*Id.* at 27-28.) R.S. jumped out of the tub, ran into the kitchen, and jumped out the window. (*Id.* at 28.) R.S. kept running until she found the bar where she worked. (*Id.*) The bar owner lived upstairs and called the police. (*Id.*) Based on R.S.'s description of her attackers, the police took her to appellant's house where she positively identified appellant. (*Id.* at 29.) R.S. was also treated at the hospital where a rape kit was performed. (*Id.* at 30.) Police recovered a used condom from the scene which tested positive for both appellant's and R.S.'s DNA. (*Id.* at 51.)

Appellant testified in his own defense. Appellant admitted having sexual intercourse with R.S. that night but claimed that it was consensual. (*Id.* at 56.) According to appellant, R.S. agreed to have sex with them for money. Appellant claimed that R.S. was angry because after the encounter, Reece took the money back. (*Id.* at 56-57.)

Following a waiver trial before the Honorable Donna M. Woelpper, appellant was found guilty of the above offenses. On August 10, 2012, appellant appeared for sentencing. Appellant received consecutive sentences of 4 to 8 years' incarceration for robbery, rape by forcible

compulsion and IDSI, for an aggregate sentence of 12 to 24 years' incarceration. Appellant's sentence of 4 to 8 years for criminal conspiracy was run concurrently. Appellant also received consecutive sentences of 2 years' reporting probation on each of the unlawful restraint and false imprisonment charges. After hearing the testimony of Barbara Ziv, M.D., of the Sexual Offenders Assessment Board, the trial court also found appellant met the statutory criteria for Sexually Violent Predator ("SVP") status.

Post-sentence motions were denied, and this timely appeal followed. Appellant has complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.[2] Appellant has raised the following issues for this court's review:

> 1. Whether appellant is entitled to an arrest of judgment with regard to his conviction for criminal conspiracy -- robbery since the Commonwealth failed to sustain its burden of proving the elements of the crime charged beyond a reasonable doubt?
>
> 2. Whether appellant is entitled to an arrest of judgment with regard to his conviction for robbery where the Commonwealth failed to prove beyond a reasonable doubt that the appellant was guilty?
>
> 3. Whether appellant was illegally sentenced for the crime of false imprisonment where false

---

[2] Initially, appellant failed to file a Rule 1925(b) statement, and the trial court filed an opinion finding waiver. (Trial court opinion, 2/6/13 at 1-3.) Subsequently, counsel's petition to withdraw was granted, and this court remanded for appointment of substitute counsel. New counsel filed a Rule 1925(b) statement, and the trial court filed a supplemental Rule 1925(a) opinion.

imprisonment and unlawful restrain [sic] merged for the purposes of sentencing as false imprisonment was a lesser included offense of unlawful restraint[?]

Appellant's brief at 2.

In his first issue on appeal, appellant argues that he was entitled to arrest of judgment on the charge of criminal conspiracy. According to appellant, Reece robbed the victim on his own and appellant did not share his criminal intent to rob the victim. Appellant argues that he was "merely present" at the scene. (Appellant's brief at 7-8.)

> In reviewing a refusal to arrest judgment, we must consider whether the evidence was sufficient to uphold the verdict of the [jury]. We must accept all the evidence and all reasonable inferences which may be drawn from that evidence upon which the fact finder could have based its verdict. If the evidence viewed in the light m[o]st favorable to the verdict winner is not sufficient to establish guilty [sic] beyond a reasonable doubt of the crime charged, then the motion should have been granted.

> ***Commonwealth v. McFadden***, 377 Pa.Super. 454, 547 A.2d 774, 775 (1988). Further, our standard of review for sufficiency of the evidence claims is well settled:

> > In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the

crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

*Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super.1997) (citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super.1997) (citing *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986)).

*Commonwealth v. McFadden*, 850 A.2d 1290, 1292-1293 (Pa.Super. 2004).

Criminal conspiracy is defined by the Crimes Code as follows:

**(a) Definition of conspiracy.**--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an

> attempt or solicitation to commit
> such crime.

18 Pa.C.S.A. § 903. "No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." 18 Pa.C.S.A. § 903(e). Evidence of an agreement between co-conspirators may be inferentially established by showing the relation, conduct, or circumstances of the parties. *Commonwealth v. Lawson*, 650 A.2d 876 (Pa.Super. 1994), *appeal denied*, 655 A.2d 985 (Pa. 1995).

> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.

*Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (Pa.Super. 2001), *appeal denied*, 803 A.2d 733 (Pa. 2002), quoting *Commonwealth v. Hannibal*, 753 A.2d 1265, 1274 (Pa. 2000).

Appellant states that he was convicted of criminal conspiracy to commit robbery. Actually, the information set forth the criminal objective of count 2, conspiracy, as "robbery/rape/kidnapping." Our review of the record indicates that appellant was convicted of criminal conspiracy generally, not limited to robbery.

Appellant argues that he was merely standing nearby while Reece robbed the victim. However, as stated above, where the Commonwealth proves the existence of a conspiracy, appellant is liable for the actions of his co-conspirator in furtherance of the conspiracy, regardless of his individual knowledge of such actions. **Galindes**, **supra**.

Here, there was overwhelming evidence to support appellant's conviction of criminal conspiracy. Appellant and Reece clearly acted in concert where they waylaid the victim as she was walking to her taxicab. Appellant walked in front and Reece walked behind as they escorted the victim at gunpoint to the abandoned apartment. Appellant and Reece both forced the victim to have sexual intercourse with them. Reece encouraged appellant to "show that bitch how we do it." Before leaving together, they warned the victim not to contact police. Appellant's sufficiency claim fails.

In his second issue on appeal, appellant makes a similar argument, contending that he could not be convicted of robbery where he was merely present while Reece robbed the victim. Again, it is well established that "a person who was not the principal actor may nonetheless be liable for the crime on the basis of conspiratorial liability." **Commonwealth v. King**, 990 A.2d 1172, 1178 (Pa.Super. 2010), **appeal denied**, 53 A.3d 50 (Pa. 2012) (citation omitted). "Each co-conspirator is liable for the actions of the others if those actions were in furtherance of the common criminal design." **Id.** We find the robbery of R.S. was not outside the scope of the conspiracy.

Appellant's argument that he was a mere onlooker and lacked shared criminal intent is belied by the record. Appellant could be found guilty of robbery as a co-conspirator.

Finally, appellant argues that his sentences for unlawful restraint and false imprisonment should have merged. Appellant is correct that false imprisonment is a lesser included offense of unlawful restraint. ***Commonwealth v. Belgrave***, 391 A.2d 662, 666 (Pa.Super. 1978). However, here, we determine that appellant's convictions were based on separate criminal acts. Therefore, the offenses did not merge.

> Initially, we note that merger is a nonwaivable challenge to the legality of the sentence. ***Commonwealth v. Robinson***, 931 A.2d 15, 24 (Pa.Super.2007). The issue is a pure question of law, allowing for plenary review. ***Id.***
>
> The merger statute states that:
>
>> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S. § 9765.

***Commonwealth v. Pettersen***, 49 A.3d 903, 911 (Pa.Super. 2012), ***appeal denied***, 63 A.3d 776 (Pa. 2013). "Our Courts have long held that where a

defendant commits multiple distinct criminal acts, concepts of merger do not apply." *Id.* at 911-912, quoting *Robinson*, 931 A.2d at 24.

> When considering whether there is a single criminal act or multiple criminal acts, the question is not "whether there was a 'break in the chain' of criminal activity." [*Robinson*] (quoting *Commonwealth v. Wesley*, 860 A.2d 585, 592 (Pa.Super.2004)). This issue is whether "the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." *Commonwealth v. Belsar*, 544 Pa. 346, 676 A.2d 632, 634 (1996) (quoting *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228, 1233 (1989)).

*Id.* at 912.

The unlawful restraint and false imprisonment statutes provide, in relevant part, as follows:

> **§ 2902. Unlawful restraint**
>
> **(a)   Offense defined.**-- Except as provided under subsection (b) or (c), a person commits a misdemeanor of the first degree if he knowingly:
>
>> (1)   restrains another unlawfully in circumstances exposing him to risk of serious bodily injury;
>>
>> or
>>
>> (2)   holds another in a condition of involuntary servitude.

18 Pa.C.S.A. § 2902(a).

> **§ 2903. False imprisonment**

> **(a) Offense defined.**--Except as provided under subsection (b) or (c), a person commits a misdemeanor of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty.

18 Pa.C.S.A. § 2903(a).

Appellant and his co-conspirator, Reece, committed unlawful restraint when they forced the victim to walk to the abandoned apartment at gunpoint. Once inside the apartment, they continued to unlawfully restrain the victim while they forced her to perform sexual acts. The victim testified that while she was performing oral sex on Reece, he kept the gun pointed towards her head. (Notes of testimony, 5/29/12 at 21.) This exposed the victim to risk of serious bodily injury. In addition, she was being held in a condition of involuntary servitude. **See Commonwealth v. Wells**, 460 A.2d 328, 330 (Pa.Super. 1983) ("involuntary servitude" has no time dimension -- any involuntary servitude, from brief to prolonged, may represent unlawful restraint).

After they robbed and raped the victim, they ordered her to get into the bathtub and stay there. (Notes of testimony, 5/29/12 at 23.) The victim testified that they instructed her to count to a specific number before getting out. (**Id.** at 26.) The victim remained in the bathtub after they left the apartment. (**Id.** at 26-27.) Appellant and Reece repeatedly threatened the victim and warned her not to contact authorities. (**Id.** at 23-27.)

Directing the victim to get into the bathtub was a distinct criminal act and constituted the crime of false imprisonment. Still brandishing a firearm, and after confiscating the victim's identification containing her street address, appellant and his co-conspirator told the victim to remain in the bathtub for a specific period of time. This satisfied the statute's requirement of knowingly restraining another unlawfully so as to interfere substantially with her liberty. Because appellant committed separate and distinct criminal acts, unlawful restraint and false imprisonment did not merge for sentencing purposes. Appellant is not entitled to a "volume discount" for his crimes. **See Pettersen**, 49 A.3d at 912 ("Appellant is not entitled to a volume discount for these crimes simply because he managed to accomplish all the acts within a relatively short period of time.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

- 13 -