J-S08029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
v.   :
   :
   :
FRANCISCO RODRIGUEZ, JR.   :
   :
Appellant   :   No. 831 MDA 2022

Appeal from the Judgment of Sentence Entered December 21, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003099-2021

BEFORE:   OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED AUGUST 28, 2023**

Francisco Rodriguez, Jr. (Appellant), appeals from the judgment of sentence entered following resentencing in the Lancaster County Court of Common Pleas, which was made final by the denial of post-sentence motions. Appellant pled guilty to one count of institutional vandalism (third-degree felony), two counts of institutional vandalism (second-degree misdemeanor), and two counts of possession of an instrument of crime (PIC) (first-degree misdemeanor).[1] The trial court modified Appellant's original sentence and ultimately imposed an aggregate sentence of four to nine years' incarceration. On appeal, Appellant challenges the discretionary aspects of his sentence as

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3307(a)(4), 3307(a)(3), and 907(a), respectively.

well as the legality based on the merger doctrine. Appellant's Brief at 9. For the reasons below, we affirm.

## I. Facts and Procedural History

Between the evening of June 29, 2021, and the morning of June 30, 2021, Appellant knocked down and damaged a Christopher Columbus statue outside the Lancaster County Courthouse and threw bricks through two glass front doors, one at the Courthouse and another at the Lancaster County Adult Probation and Parole Office. **See** Trial Ct. Op., 8/19/22, at 1 (unpaginated); **see also** N.T., 12/1/21, at 3-4. The entire incident was captured on video camera. **See id.** at 4.

Several days later, Appellant was charged with one count of institutional vandalism (adjacent ground), two counts of institutional vandalism (educational facility), and two counts of PIC. On December 1, 2021, Appellant entered an open or non-negotiated guilty plea to the above-mentioned crimes. Appellant waived his right to presentence investigation report (PSI)[2] and immediately proceeded to sentencing. The trial court originally imposed the following sentences: (1) a term of two to five years' imprisonment for institutional vandalism (adjacent ground); (2) one to two years' incarceration for both counts of institutional vandalism (educational facility); and (3) one to two years' imprisonment for both counts of PIC. **See** N.T., 12/1/21, at 3-4,

---

[2] **See** N.T. 12/1/21, at 6.

8. The sentences for all three institutional vandalism convictions were to run consecutively and the PIC sentences were to run concurrently. *Id.* at 8. The three sentences for institutional vandalism fell outside the aggravated range of the Pennsylvania Sentencing Guidelines, while the PIC sentences fell within the standard range of the guidelines. In total, Appellant was sentenced to an aggregate four to nine years of imprisonment. *Id.* The court also ordered Appellant to pay restitution of $9,447.87 for the damages he caused. *Id.* at 9.

Appellant filed a timely post-sentence motion on December 13, 2021, alleging the trial court abused its discretion, and the trial court granted his motion.

A resentencing hearing took place on December 21, 2021, wherein the Commonwealth asked the court to set forth its reasons for departure from the sentencing guidelines. *See* N.T., 12/21/21, at 2. As a result, the court imposed new sentences that fell within the standard ranges of the sentencing guidelines. Specifically, the court resentenced Appellant as follows: a term of one to three years for institutional vandalism (adjacent ground), six to 12 months for both counts of institutional vandalism (educational facility), and one to two years for both counts of PIC. *See id.* at 9. Each count was to run consecutively. *Id.* Nevertheless, the court's sentencing structure did not change Appellant's aggregate sentence of four to nine years' incarceration.

Appellant filed another post-sentence motion on December 30, 2021,[3] which the court denied on May 5, 2022.[4]

Appellant filed a timely notice of appeal on May 27, 2022. Appellant was directed to file a concise statement of errors pursuant to Pa.R.A.P.

_____

[3] The certified record indicates Appellant was appointed new counsel on January 5, 2022.

[4] We note that when an appellant files a post-sentence motion, a trial court has 120 days to enter a decision. If the court fails to decide the motion within that period, the motion is denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a) (stating that the trial court judge has 120 days to decide a post-sentence motion, and if the judge fails to do so, the motion will be denied by operation of law). Moreover, typically, an appellant would file a timely appeal 30 days after the entry of the order to deny the post-sentence motion by operation of law. *See* Pa.R.Crim.P. 720(A)(2)(b).

Here, a review of the docket reveals the 120-day period for Appellant's post sentence motion expired on April 29, 2022. The trial court had not entered a decision by the date, and the clerk of courts failed to enter the order acknowledging the motion was denied. *See* Pa.R.Crim.P. 720(B)(3)(c) (stating that the clerk of courts must enter the denial of post-sentence motion by operation of law and serve a copy of the order on the attorneys for the Commonwealth and the defendant). Instead, the trial court entered an order denying Appellant's post-sentence motion on May 5, 2022, which was outside the 120-day period. Thereafter, the clerk of courts issued an order denying Appellant's motion by operation of law on May 10, 2022.

This Court has previously concluded that where a clerk of court fails to enter an order denying the motion by operation of law pursuant to Rule 720(B)(3)(a), there is a "breakdown of court processes," and the appeal will be considered timely and deemed legitimate for review. *See* ***Commonwealth v. Patterson***, 940 A.2d 493, 499 (Pa. Super. 2007) (finding "a breakdown where the clerk of courts did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law"). Accordingly, we find Appellant filed a timely notice of appeal where he filed it within 30 days of the May 5, 2022, order and the May 10, 2022, order denying by operation of law.

1925(b), which he timely complied with on June 17, 2022. The trial court issued a Pa.R.A.P. 1925(a) opinion on August 19, 2022.

## II. Questions Presented

Appellant raises the following issues on appeal:

1. [Whether] the [trial c]ourt abuse[d] its discretion by resentencing [Appellant] to an aggregate sentence of four to nine years' incarceration, altering which counts were consecutive and which [were] concurrent, without stating its reasons on the record, and reaching the same sentence it had previously imposed by flouting the Sentencing Guidelines?

2. [Whether] Counts Four and Five [should] have merged for sentencing purposes?

Appellant's Brief at 9.

## III. Discretionary Aspects of Sentencing

Appellant first claims his "sentence . . . is manifestly excessive, clearly unreasonable, and an abuse of discretion." Appellant's Brief at 22. This issue concerns the discretionary aspects of sentencing. It is well established that there is no automatic right to appeal with respect to a discretionary aspect of sentencing claim. *See Commonwealth v. White*, 193 A.3d 977, 982 (Pa. Super. 2018). However, before we discuss the merits of the challenge, we must determine:

> (1) whether the appeal [was timely-filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Id.* at 982 (citation omitted).

Here, Appellant has satisfied the first three prongs: (1) he timely filed a notice of appeal; (2) he preserved his issue by filing a post-sentence motion, and (3) he included a statement pursuant of Rule 2119(f) in his appellate brief.[5]  We next must determine whether Appellant has raised a substantial question.  The issue must be reviewed on a case-by-case basis.  *See Commonwealth v. Swope*, 123 A.3d 333, 338 (Pa. Super. 2015).  "A substantial question exists only when [A]ppellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  *Id.* at 338 (citation omitted).

A claim that a sentence is excessive where the sentences are all consecutive and within the guideline range generally does not raise a substantial question.  *See Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010).  However, this Court has held that "an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question."  *Swope*, 123 A.3d at 339 (citations omitted).  In determining whether a substantial

---

[5] *See* Appellant's Post-Sentence Motion, 12/30/21, at 1-3 (unpaginated); Appellant's Brief at 19-21.

question exists, this Court does not examine the merits of whether the sentence is excessive; "[r]ather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable." *Id.* at 340 (citations omitted).

Here, Appellant asserts an excessive sentence claim, alleging the trial court failed to adequately consider mitigating factors and failed to state its reasons for the sentence. *See* Appellant's Brief at 22. Furthermore, he claims the trial court restructured Appellant's sentence by making a "series of calibrated choices" as to what was consecutive and concurrent to arrive at the same sentence as prior to resentencing. *See id.* at 23. Thus, Appellant has successfully raised a substantial question. *See Swope*, 123 A.3d at 339. We will now examine the merits of his argument.

Appellant claims the court's sentence is "manifestly excessive, clearly unreasonable and an abuse of discretion." Appellant's Brief at 22. First, Appellant argues "the [trial] court's failure to explain its sentence on either occasion leaves all parties guessing as to its purpose." *Id.* (emphasis omitted). Appellant contends we "should consider the full procedural history of the sentence imposed in order to find that it constitutes an abuse of discretion." *Id.* Specifically, he points to his original December 1, 2021, sentence, where the trial court imposed sentences that were above the aggravated range but did not provide a "written justification." *Id.* at 23. Turning to his new sentence, Appellant complains that when the trial court

resentenced him to serve the same aggregate sentence as his original sentence, it did not offer a reason and "[n]o explanation was offered for altering which sentence would be served consecutively or concurrently with one another[.]" *Id.* He concludes: "The unique procedure by which the court below reached its desired outcome, dressing it up in the [s]entencing [g]uidelines only when prompted, should not insulate it from scrutiny." *Id.* at 24.

Next, Appellant avers the trial court failed to adequately consider any mitigating factors. *See* Appellant's Brief at 24-25. He emphasizes the following: (1) no one was injured during the incident; (2) he readily admitted his guilt to police; (3) the victims were institutions and not actual people; and (4) he has mental health issues and suffered a "brutal" childhood. *Id.* at 24-26.

This Court's standard of review concerning a discretionary aspects of sentencing challenge is well-established as follows:

> [S]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Brown*, 249 A.3d 1206, 1211 (Pa. Super. 2021) (citation omitted). "[W]hen imposing sentence, [we acknowledge] the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual

circumstances before it." ***Commonwealth v. Mulkin***, 228 A.3d 913, 917 (Pa. Super. 2020) (citation omitted).

The trial court must consider the factors set out in 42 Pa.C.S.§ 9721(b) when imposing a sentence, which includes "the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant." ***Commonwealth v. Clemat***, 218 A.3d 944, 960 (Pa. Super. 2019) (citation omitted). "Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines." ***Id.***

"Although [a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, . . . the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Flowers***, 149 A.3d 867, 876 (Pa. Super. 2016) (citation omitted). The "on-the-record disclosure requirement does not require the trial court to make 'a detailed, highly technical statement.'" ***Commonwealth v. Hunzer***, 868 A.2d 498, 514 (Pa. Super. 2005) (citation omitted).

Furthermore, this Court "will not disturb consecutive sentences unless the aggregate sentence is 'grossly disparate' to the defendant's conduct, or 'viscerally appear[s] as patently unreasonable.'" ***Brown***, 249 A.3d at 1212

(citation omitted). It is "within [the trial court's] discretion to impose consecutive sentences, even though it amount[s] to a lengthy sentence." *Commonwealth v. Bankes*, 286 A.3d 1302, 1310 (Pa. Super. 2022) (citation omitted). This Court has also established "standard range consecutive sentences are not clearly unreasonable where the trial court relies on the defendant's prior history and a finding that he was a high risk to re-offend." *Commonwealth v. Dodge*, 77 A.3d 1263, 1277 (Pa. Super. 2013) (citation omitted).

Because Appellant's argument also concerns the trial court's failure to consider mitigating factors, we are guided by the following:

> The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation.
>
> However, where the sentencing judge had the benefit of a presentence investigation report . . . it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (citation omitted). As noted above, Appellant waived his right to a PSI. "In the absence of a PSI, the court must conduct a pre-sentence inquiry such that it is apprised of the particular circumstances of the offense, not limited to those of record, as well as defendant's history and background." *Commonwealth v. Kelly*, 33 A.3d 638, 642 (Pa. Super. 2011) (citation and quotation marks omitted).

Turning to the present matter, although Appellant waived the PSI, the trial court gleaned enough information from pre-sentence inquiry to make an informed sentence. A review of the record reveals the following: Appellant had a prior record score (PRS) of four. *See* Pennsylvania Commission of Sentencing Guideline Sentence Form, 2/10/22, at 1. The offense gravity score (OGS) for institutional vandalism (adjacent ground) was five, the OGS for institutional vandalism (educational facility) was two, and the OGS for PIC was three. The applicable standard range for each count is as follows: (1) nine to 16 months' incarceration for institutional vandalism (adjacent ground); (2) 150 hours of community service to 6 months' incarceration for institutional vandalism (educational facility); (3) three to 14 months' imprisonment for PIC. Each sentence was at the top end of the standard range of the sentencing guidelines.[6]

We note the trial court incorporated the original December 1, 2021, sentencing transcripts into the record at the resentencing hearing. *See* N.T., 12/21/21, at 5. At the December 1st proceeding, the trial court heard the following information from Appellant and his counsel: (1) Appellant was 35

---

[6] We note that in its Rule 1925(a) opinion, the trial court comments that the two PIC sentences fell in the aggravated range of the sentencing guidelines. *See* Trial Ct. Op.at 8 (unpaginated). However, a review of the sentencing guidelines forms indicates that two sentences fell within the standard range. *See* Pennsylvania Commission of Sentencing Guideline Sentence Form at 1. Moreover, in his appellate brief, Appellant does not contend that upon resentencing, these sentences were in the aggravated range.

years old at the time he committed the crimes at issue; (2) he had a 12th grade education; (3) "[o]ne of [Appellant's] first memories [was] his mother trying to drown him in the bathtub[;]" (4) Appellant "was placed in foster case where his foster parents had 22 kids and basically used it for money[;]" (5) he "was abused and placed on psychiatric drugs starting at age 12, [when he] subsequently developed [a] bipolar disorder, mental health issues as well as [a] drug addiction." N.T., 12/1/21, at 3, 5. Appellant's counsel also relayed:

> On the day of these actions, he was trying to leave the place he was staying because people in the house were using drugs. He was trying to remove himself from the situation. He tried going to the [Water Street Rescue] Mission, and he was rejected from there because of his history.
>
> He was off his medications and basically wandering the streets at night looking for a place to go. He was angry and he took that anger out on the courthouse, the Probation Office[,] and the Christopher Columbus statue.
>
> He accepts that this was wrong and that he acted irrationally. He's working to get further help for his issues.

*Id.* at 5-6.

At the resentencing proceeding, defense counsel requested "a guideline sentence." N.T., 12/21/21, at 5. Counsel asserted Appellant's prior record was included in the PRS. *See id.* at 6. Additionally, counsel presented several mitigating factors, including the following: (1) Appellant had been diagnosed with bipolar disorder as well as schizophrenia, and previously had been hospitalized to receive treatment; and (2) Appellant had confessed and accepted responsibility for the crimes committed. *See id.*

Invoking the right to allocution, Appellant attested to the following:

[Appellant]: I was on medication previous to my last incarceration. Recently, currently, I'm off the medication.

[M]ost of my family is military background.

I . . . would like to request an upstate sentence, . . . I'm guessing not as harsh as what . . . was offered.

I had a serious issue trying to get a better footing in coming home from this – the last bid – the last incarceration I had. I was trying to move out of a bad situation, a living status situation.

I had spoke[n] to . . . my [probation officer], and she denied me a change of an address. So . . . I asked her to – I was [going to] move into Water Street Rescue Mission while I was on probation.

Every probation . . . appointment I had I made. If I didn't make the appointment I called three days previous. I had to have that taken care of.

So the reason that I did this is because I had a big problem. She[7] wanted me to go to a therapist or – or some type of doctor – and have . . . the person analyze me . . . if I was mental status health eligible or not.

But she also told me if there [were] pills prescribed that I was [c]ourt[-]ordered to take pills. And this is the reason that . . . I was so messed and mentally scrambled.

When I went to Torrance [State Hospital,] he[8] told me the pills that I was taking dropped my . . . white blood cell count to 300.

---

[7] The record does not indicate who Appellant was referencing when he said "she."

[8] The record does not indicate who Appellant was referencing when he said "he."

[Defense counsel]: And if I may, Your Honor, we do have Torrance records indicating [Appellant] was on Seroquel for years. They found out he was actually allergic to Seroquel is what he's referencing.

[The Court]: Okay.

[Appellant]: So he basically . . . tweaked my medication. And he told me . . . at [a] white cell blood count of 300 I was basically . . . close to death.

And . . . he rehabilitated me there at Torrance. I came back healthy. And from there, that was . . . basically . . . the situation.

I . . . was extremely angry last time just over the situation. I'm going through a very hard time[.]

N.T., 12/21/21, at 6-8.

The trial court then imposed sentence but did not fully elucidate the reason behind its ruling. **See** N.T., 12/21/21, at 9-10. Nevertheless, in its Rule 1925(a) opinion, the court further elaborated that Appellant's sentence was based on his prior criminal history and high possibility of recidivism. **See** Trial Ct. Op. at 7-8 (unpaginated). Specifically, the court found:

[Appellant] waived his right to a [PSI], and th[e c]ourt was made aware of the [Appellant's] crimes, his acceptance of responsibility by confessing to police the same day and pleading guilty, his mental illness and associated difficulties, that he was the victim of child abuse and currently has substance abuse issues, and that the crimes were non-violent. Additionally, th[e c]ourt considered the sentencing guidelines and prior record, the maximum penalties allowed under law, statements of the [Appellant] and counsel, character, demeanor, age, education, and the necessity for community protection. In considering these factors, this Court did take account of individualized circumstances of [Appellant]; thus the [judgment] exercised was reasonable.

**Id.** at 7 (unpaginated).

- 14 -

From the facts above, we discern no abuse of discretion on the part of the trial court with regard to its imposition of Appellant's sentences. First, with respect to Appellant's argument that the court failed to explain its rationale for his sentence, we reiterate the trial court is not required to make a detailed, technical statement. *See Hunzer*, 868 A.2d at 515 (finding a one-sentence explanation during the sentencing hearing sufficient reason for the sentence imposed). Here, the information provided at the two sentencing proceedings as well as the court's statements in its Rule 1925(a) opinion reflected its "consideration of the facts of the crime and character of the offender." *Flowers*, 149 A.3d at 876. Accordingly, Appellant's allegation has no merit.

Second, to the extent Appellant argues the court erred in imposing consecutive instead of concurrent sentences, we emphasize that a standard range consecutive sentence is not considered excessive or unreasonable "where the trial court relies on the defendant's prior history and a finding that he was a high risk to re-offend." *Dodge*, 77 A.3d at 1277. Here, the trial court indicated that it relied on Appellant's prior criminal history and his elevated risk to reoffend. *See* Trial Ct. Op.at 7 (unpaginated). Accordingly, Appellant's assertion is unavailing.

Third, with regard to Appellant's argument the trial court failed to adequately consider any mitigating factors, it is clear from the record that the trial court was aware of this information at the time of the two sentencing

proceedings. The trial court explicitly acknowledged and stated that it considered these mitigating factors, including Appellant's mental health issues and his admission of guilt, in its Rule 1925(a) opinion. *See* Trial Ct. Op. at 7. Appellant has failed to convince us that the trial court's exercise of discretion was unreasonable. *See Swope*, 123 A.3d at 340. Therefore, Appellant is not entitled to relief regarding his discretionary aspects of sentencing claim.

### IV. Merger Doctrine for Sentencing Purposes

Appellant's final argument is that his sentence is illegal because the two PIC counts should merge into one count for sentencing since both PIC counts share the same elements of the crime. *See* Appellant's Brief at 27. He argues that both convictions "share all elements and, critically, identical conduct; the possession of 'red bricks.'" *Id.* Moreover, he alleges: "The [c]riminal [i]nformation makes no differentiation between bricks. The [trial] court supplies as fact the claim that a different brick was used to break each window. But the charging document makes no such claim." *Id.* (citation omitted). Appellant also avers that had he broke the two glass doors with a hammer, he would only have been convicted of one PIC offense. *Id.* at 28.

A challenge concerning the applicability of the merger doctrine implicates the legality of the sentence. *See Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009) (explaining that "[w]hether Appellant's convictions merge for sentencing is a question implicating the legality of

Appellant's sentence"). Accordingly, our standard of review is *de novo* and our scope of review is plenary. ***Id.***

Section 9765 of the Sentencing Code provides, in relevant part, that "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S. § 9765; ***see also Commonwealth v. Pitner***, 928 A.2d 1104, 1111 (Pa. Super. 2007). "Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense." 42 Pa.C.S. § 9765; ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009). Additionally, if the two crimes stem from two separate criminal acts, then merger analysis is inapplicable. ***Commonwealth v. Williams***, 958 A.2d 522, 527 (Pa. Super. 2008) (citation omitted). "When determining whether separate crimes constitute a single criminal act, this Court has stated that 'we should look to the elements of the crimes involved as charged by the Commonwealth.'" ***Commonwealth v. Kimmel***, 125 A.3d 1272, 1276 (Pa. Super. 2015) (citation omitted).

Here, the two PIC charges arose from two separate criminal acts. Contrary to Appellant's argument, the criminal complaint indicated Appellant "threw red **bricks** through the front glass doors" of the two buildings. Criminal Complaint, 7/6/21, at 4 (unpaginated; emphasis added). Likewise, the criminal information also references "red **bricks**." Information, 8/12/21, at 1

(emphasis added). Accordingly, these notations indicate that multiple bricks were used to commit two separate crimes — not just one brick as Appellant now alleges.

Moreover, in concluding the two crimes do not merge, the trial court found the following:

> As the crime of breaking the glass door of the Lancaster County Courthouse involved the possession of red bricks thrown through that particular door, the act of throwing red bricks through the glass door of the Lancaster County Adult Probation Office constitutes a separate crime, as different bricks were used to cause the damage that occurred in two separate and distinct locations.

Trial Ct. Op. at 8.

We agree with the trial court's conclusion. In **Commonwealth v. Belsar**, 676 A.2d 632 (Pa. 1996), the Pennsylvania Supreme Court noted that "if . . . the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes." **Belsar**, 676 A.2d at 634 (citation omitted). The **Belsar** Court further determined that "when a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each." **Id**. In **Belsar**, the defendant shot the victim multiple times, paused to look for the victim's car keys, then kicked the victim after learning she was still alive. The **Belsar** Court concluded these were separate criminal acts, which provided for separate sentences — attempted murder for

the shooting, and aggravated assault for the kicking. *Id*.[9] Turning to the present matter, there were two separate criminal acts that gave rise to two separate PIC counts — Appellant admitted to using one brick to vandalize a courthouse door and then used a separate brick to damage the probation office door. *See* N.T., 12/1/21, at 3-4. Thus, Appellant's legality of sentence claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/28/2023

---

[9] *See also Commonwealth v. Wesley*, 860 A.2d 585, 593 (Pa. Super. 2004).